**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DONNA STERNER<br>923 Rigg Road<br>Burlington, NJ 08016<br><br>    Plaintiff,<br>  v.<br><br>VIRTUA MEMORIAL HOSPITAL<br>175 Madison Avenue<br>Mt. Holly, NJ 08060<br>    and<br>VIRTUA HEALTH INC., d/b/a<br>VIRTUA HEALTH<br>303 Lippincott Drive, 4th Floor<br>Marlton, NJ 08053<br><br>    Defendants. | CIVIL ACTION<br><br>No. _____<br><br>**JURY TRIAL DEMANDED** |

**CIVIL ACTION COMPLAINT**

Plaintiff, Donna Sterner, (hereinafter referred to as "Plaintiff"), by and through her undersigned counsel, hereby avers as follows:

### I. Introduction

1. Plaintiff has initiated this action against Virtua Memorial Hospital and Virtua Health, Inc., d/b/a Virtua Health (hereinafter referred to collectively as "Defendants") for violations of the Family and Medical Leave Act ("FMLA" – 29 U.S.C. §§ 2601, *et. seq*.) and the New Jersey Law Against Discrimination ("NJ LAD" - N.J.S.A. §§ 10:5-1, *et. seq*.). As a direct consequence of Defendants' unlawful actions (her discriminatory and wrongful termination from employment), Plaintiff seeks damages as set forth herein.

## II.     Jurisdiction and Venue

2.      This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this State and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

3.      This action is initiated pursuant to the Family and Medical Leave Act ("FMLA") and applicable state law(s). The United States District Court for the District of New Jersey has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state-law claim(s) because such claim(s) arise out of the same common nucleus of operative facts as her federal claims asserted herein.

4.      Venue is properly laid in this District pursuant to 28 U.S.C. sections 1391(b)(1) and (b)(2), because Defendants reside in and/or conduct business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## III.     Parties

5.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6.      Plaintiff is an adult individual with an address as set forth above.

7.      Virtua Memorial Hospital ("Defendant VMH" where referred to individually) is a full-service regional medical center in Mount Holly, New Jersey. This hospital has in excess of

400 beds and provides emergency, non-emergency, surgeries, and an array of other specialty medical care(s).

8.  Virtua Health Inc., d/b/a Virtua Health ("Defendant Virtua" where referred to individually) is a non-profit healthcare system based in Southern New Jersey and headquartered at the above-captioned address. Defendant Virtua operates a network of hospitals, surgery centers, physician practices, and other sites.

9.  Defendant Virtua controls all operations, management, policies, benefits, and other aspects of employment within its facilities, such as within Defendant VMH. Additionally, while employed at Defendant VMH (physically), much of her documentation and policies were provided by and through Defendant Virtua (inclusive of her termination correspondence). These entities are properly considered single, joint and/or integrated employers for the purposes of this lawsuit.

10. At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the benefit of Defendants.

### IV.   Factual Background

11. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

12. Plaintiff was hired by Defendants in or about mid-1998; and in total, Plaintiff worked for Defendants for approximately 23 years (until being involuntarily terminated, as discussed *infra*).

13. Plaintiff was employed (full-time) by Defendant as a Unit Secretary. In this capacity, Plaintiff generally worked Monday to Friday, 3 PM – 11 PM. And her duties generally

included answering telephone calls, handling of patient charts / documentation, escorting patients to various rooms, ordering supplies, and other (non-specified) related duties.

14. As a Unit Secretary, Plaintiff (like other nursing staff and nursing administrative staff) reported to Hina Thaker (Defendants' Director of Nursing, a/k/a "DON").

15. Plaintiff is a 59-year-old woman, she has and continues to suffer from permanent and long-term disabilities. In association with (and as a result of) several of her disabilities, Plaintiff sought, was approved for, and utilized leave on an intermittent basis under the Family and Medical Leave Act ("FMLA").

16. Plaintiff had most recently sought (by way of application and certification) FMLA leave from Defendants in or about July of 2021 due to her "chronic migraines, anxiety" and other related complications. Plaintiff has other health problems as well.

17. While using FMLA for her permanent and chronic health problems, Plaintiff typically missed several days per month (a medical accommodation and protected form of FMLA absenteeism).

18. Defendants' management expressed significant animosity towards Plaintiff's health problems and limitations leading up to her termination from employment. Solely by way of examples (and not intending to create an exhaustive list):

- Defendants' management expressed concerns about whether Plaintiff could do her job and even navigate the stairs quick enough as part of her duties;

- Defendants' management expressed concerns about Plaintiff taking periodic time off for her health and intermittent leave relating to scheduling concerns (as Plaintiff used federally-protected FMLA leave on an intermittent basis); and

- Defendants' management exhibited exasperation when Plaintiff would call out for using FMLA on many occasions.

19. Due to health complications, Plaintiff required an approximate 4-week (or month-long) medical leave of absence (which was FMLA-qualifying and/or a reasonable medical accommodation under applicable anti-discrimination law(s)).

20. In exceedingly close temporal proximity from her aforesaid approximate month-long medical leave (and return), Plaintiff was suspended on or about November 17, 2021.

21. The circumstances surrounding Plaintiff's suspension are as follows:

   a) Plaintiff's mother was taken to the hospital in which Plaintiff worked for serious health-related problems;

   b) Plaintiff was accused of and/or questioned of improperly swiping in with her badge to an area of the hospital to be with and/or see her mother; and

   c) Plaintiff was accused of engaging in a technical or compliance violation by utilizing her badge.

22. Staff and nurses make *grave* errors within Defendants' facilities <u>all the time</u>. Such staff and/or nurses commit HIPPA violations, charting errors, nursing errors, medication errors, medical errors, and other serious or technical infractions. They <u>are not</u> immediately terminated, and they – like Plaintiff – were under the general supervision of Thaker.

23. Plaintiff was being nitpicked on a regular basis towards the end of her employment and continually scrutinized about her ability to perform her job in light of her ongoing health problems and medical absenteeism. Defendants were looking for <u>any</u> reason whatsoever to pretextually terminate Plaintiff.

24. Plaintiff did not even believe she did anything wrong in relation to her underling suspension, *let alone anything that could possibly warrant a termination*. Plaintiff had otherwise been a remarkable and stellar near 23-year employee who worked very hard and didn't have prior progressive discipline.

25. Plaintiff was terminated by letter dated December 3, 2021, which was signed by Thaker. This letter identified that Plaintiff's termination was deemed effective from Defendants the same date (12/3/21).

26. Because Defendants knew the rationale in which Plaintiff was suspended and ultimately terminated was not a valid basis for termination, Defendants had to contort the reason(s) claiming it was not solely related to any underlying compliance problem – but instead – because Plaintiff was somehow <u>dishonest</u> during the investigation. Plaintiff also disputes being dishonest, *again illustrating the complete witch-hunt used to find any basis to get rid of Plaintiff*.

27. Plaintiff's termination was discriminatory and retaliatory in violation of state and federal laws.

## Count I
## <u>Violations of Family and Medical Leave Act ("FMLA")</u>
### (Wrongful Termination - Retaliation)

28. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

29. Plaintiff was a full-time employee who worked for Defendants for more than 1 year within a location that employed at least 50 employees within 75 miles. And Plaintiff met all other thresholds for FMLA eligibility; and in fact, Defendants approved her qualification of such protections.

30. Plaintiff was scrutinized, subjected to verbal concerns, and mistreated on account of using FMLA leave.

31. Plaintiff was pretextually terminated from Defendants for use, exercise, and requests of FMLA leave. These actions by Defendants constitute unlawful FMLA retaliation.

**Count II**
**Violation of the New Jersey Law Against Discrimination (NJ LAD)**
**(Wrongful Termination – Health Discrimination and Retaliation)**

32. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

33. Plaintiff was terminated from Defendants due to: (a) her actual and/or perceived health problems; (b) her record of impairment; (c) her concerns of mistreatment or scrutiny related to her health problems; and/or (d) due to her requested medical accommodations (time off from work).

34. These actions as aforesaid constitute violations of NJ LAD.

**Count II**
**Violation of the New Jersey Law Against Discrimination (NJ LAD)**
**(Wrongful Termination – Age Discrimination)**

35. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

36. Plaintiff was terminated from Defendants because of her advanced age. In particular:

   a) Plaintiff was questioned about her abilities to navigate stairs, indicating concerns associated with fragility at Plaintiff's age;

   b) At almost 60 years of age, Plaintiff was clearly one of Defendants' oldest employees; and

   c) Plaintiff was suspended and terminated for a compliance issue or technical violation despite that younger administrative and nursing staff are not terminated for similar or worse alleged compliance or technical violations.

37. Upon information and belief, Defendants' have also shifted their workforce to a much younger demographic over the last several years.

38. These actions of terminating Plaintiff because of her age constitute violations of the NJ LAD.

**WHEREFORE**, Plaintiff prays that this Court enter an order providing that:

A. Defendants are to be prohibited from continuing to maintain their illegal policy, practice, or custom(s) of discriminating against employees based on their disabilities or accommodation needs or FMLA usage, and are to be ordered to promulgate an effective policy against such discrimination/retaliation/interference and to adhere thereto;

B. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered the aforesaid unlawful actions at the hands of Defendants until the date of verdict;

C. Plaintiff is to be awarded punitive and/or liquidated damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct, and to deter Defendants or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate;

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F.  Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law;

G.  Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

                                    Respectfully submitted,

                                    **KARPF, KARPF, & CERUTTI, P.C.**

By: _____
                                    Ari R. Karpf
                                    3331 Street Road
                                    Two Greenwood Square, Suite 128
                                    Bensalem, PA 19020
                                    (215) 639-0801

Dated: February 21, 2022